## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BROWN INDUSTRIAL CONSTRUCTION, LLC**            **CIVIL ACTION**

**VERSUS**

**NO. 22-628-SDD-RLB**

**AGGREGATE TECHNOLOGIES, INC.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on May 22, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **BROWN INDUSTRIAL CONSTRUCTION, LLC** | **CIVIL ACTION** |
| **VERSUS** | |
| **AGGREGATE TECHNOLOGIES, INC.** | **NO. 22-628-SDD-RLB** |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion to Remand. (R. Doc. 10). The motion is opposed. (R. Doc. 16). For the reasons set forth herein, the undersigned recommends that the Motion to Remand be **DENIED.**

**I.      Background**

On or about September 1, 2022, Brown Industrial Construction, LLC ("Plaintiff") filed a Petition for Damages ("Petition") in the 18th Judicial District Court, Iberville Parish, State of Louisiana, naming as a defendant, Aggregate Technologies, Inc. ("Defendant"). (R. Doc. 1-2).

The Petition states that, in January 2022, Plaintiff hired Defendant as a subcontractor to perform hydro-demolition services at property owned by Westlake Chemical, which is one of Plaintiff's industrial clients (the "Project"). (R. Doc. 1-2 at 3-4).

Plaintiff provided Defendant with a purchase order that outlines the terms, conditions, and scope of work of the Project (the "Purchase Order"). Particularly, the Purchase Order specifies that the total price "for the approved goods and/or services [are] on the 'face of the Purchase Order,' and that any '[i]nvoices submitted in excess of the Purchase Order…[would] be rejected.'" (R. Doc. 1-2 at 4). The Purchase Order also states that any alternative or differing terms from those set forth therein would have to be expressly agreed to in writing. (R. Doc. 1-2 at 4, 10). Finally, the Purchase Order provides that Defendant waives it right to place a lien on

Westlake Chemical's property as a result of any work associated with the Project. (R. Doc. 1-2 at 6).

The "face of the Purchase Order" provides that the cost of goods and services are $73,285. (R. Doc. 1-2 at 10). Because of interruption in services, the parties agreed upon additional work that totaled $23,900. (R. Doc. 1-2 at 4). Thereafter, Defendant performed additional unauthorized work and submitted an invoice to Plaintiff in the amount of $110,856. (R. Doc. 1-2 at 5). After disputes from Plaintiff, Defendant submitted a demand letter to Plaintiff seeking $215,755.[1] (R. Doc. 1-2 at 5).

On June 10, 2022, Defendant filed a lien on the property owned by Westlake Chemical for $215,755, which Plaintiff asserts is in contravention of the terms of the Purchase Order. (R. Doc. 1-2 at 6).

Plaintiff's petition seeks, among other things, removal of that lien. According to Plaintiff, the lien is improper because (1) Defendant "contractually waived its right to lien the Project"; (2) Defendant "did not have authority to perform any work exceeding the value on the face of the Purchase Order, i.e., $73,285.00 plus the $23,900.00 for the work delayed by [Plaintiff's] principal, totaling $97,185.00, which [Plaintiff] has already paid;" and (3) the lien "includes amounts that [Defendant] admits it is not owed." (R. Doc. 1-2 at 6). As a result, Plaintiff filed suit seeking removal of Defendant's lien and "indemnification for all attorneys' fees, court costs, and expenses." (R. Doc. 1-2 at 7).

On September 9, 2022, Defendant removed the action on the basis that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. (R. Doc. 1). Defendant filed an Amended Notice of Removal on October 26, 2022. (R. Doc. 7). Defendant asserts that there is complete

---

[1] Plaintiff asserts that $215,755 is "the aggregate value of all of [Defendant's] invoices, including the $110,856 for unapproved work." (R. Doc. 1-2 at 5).

diversity because Plaintiff is a citizen of Louisiana and Defendant is a citizen of Texas. (R. Doc. 7 at 3). Defendant further asserts that it is facially apparent that the amount in controversy is met because the central issue in Plaintiff's Petition is the removal of Defendant's "improper" lien in the amount of $215,755. (R. Doc. 7 at 4). In the Affidavit of Ronnie Wills, an employee of Defendant, Defendant admits that "[s]ubsequent to filling the" lien, Plaintiff "issued partial payment to [Defendant] in the amount of $97,185.00." (R. Doc. 1-3). Accordingly, "[Plaintiff] is indebted to [Defendant] in an amount not less than $118,570.00." (R. Doc. 1-3).

## II.     Arguments of the Parties

Plaintiff argues that the amount in controversy is not met because the "true object of [Plaintiff's] litigation is the removal of [Defendant's] lien." (R. Doc. 10-1 at 3). In support of remand, Plaintiff relies on *Garcia v. Koch Oil Co. of Texas Inc.,* 351 F.3d 636 (5th Cir. 2003). In *Garcia,* the plaintiffs filed suit alleging that the defendants failed to reimburse them for certain oil and gas overages. The plaintiffs sought the following relief: (1) an equitable accounting to determine whether any part of the overages could be attributed to individual plaintiffs' well sites, (2) restitution damages, and (3) attorney's fees and costs.

The defendants argued that the amount in controversy would be met if the costs associated with performing equitable accounting were calculated in the amount in controversy. In rejecting this argument, the Fifth Circuit explained that equitable accounting is a discovery tool used to determine the amount of money (if any) is due to the plaintiff from the defendant. *Garcia,* 351 F.3d at 641 (citing *Bradshaw v. Thompson,* 454 F.2d 75, 79 (6th Cir. 1972) ("An accounting is a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much if any, money is due him from another.")). Therefore, the costs for performing equitable accounting are collateral to the true object of litigation: "the payment of

restitution damages to the plaintiffs." *Id.* at 640. Simply put, the costs associated with equitable accounting is a discovery (or litigation) cost that is not relevant to whether diversity jurisdiction exists. *Id.* at 641.

Applying *Garcia,* Plaintiff seemingly suggests that the value of the lien is immaterial, and the only "damages" that it will suffer are the "costs, fees, and expenses" associated with the removal of the lien, which are not relevant to the amount in controversy. (R. Doc. 10-1 at 3). Plaintiff likens these "damages" to the equitable accounting fees at issue in *Garcia* because they are simply "the means by which" Plaintiff "will calculate its damages." (R. Doc. 10-1 at 3).

In opposition, Defendant argues that "the value of the present and potential loss to [Plaintiff] is not just costs for removing [the lien,] but the amount of the lien itself—$215,755.00." (R. Doc. 16 at 3). To support its position, Defendant argues that a more analogous case is *Cisney v. Johnson,* No. 2:17-CV-705-TFM, 2018 WL 2594991, at *1 (M.D. Ala. July 25, 2018).

In *Cisney,* after being involved in a motor vehicle accident, the plaintiffs filed suit against the at-fault party's insurance carrier, as well as an underinsured motorist claim. *Cisney,* 2018 WL 3594991, at *1. During the lawsuit, the plaintiffs fired their attorney and retained new counsel. After the matter was resolved, the fired attorney filed an attorney's lien on the proceeds from the underlying lawsuit in the amount of $175,338. *Cisney,* 2018 WL 3594991, at *2. The plaintiffs then filed a separate suit seeking a declaratory judgment that the attorney's lien was invalid, as well as compensatory and punitive damages in the amount of $50,000 for the attorney's alleged legal malpractice. *Cisney,* 2018 WL 3594991, at *2.

The attorney removed the matter to federal court on the basis of diversity jurisdiction. In seeking remand, the plaintiffs argued that the amount in controversy was not met because

removal of the lien has no value. *Cisney,* 2018 WL 3594991, at *5. The court explained that "the value of the declaratory relief is the monetary value of the benefit that would flow to the plaintiff[s] if the relief [sought] were granted." *Cisney,* 2018 WL 3594991, at *4 (internal citations omitted). Accordingly, the court held that the value of the lien was clearly in dispute because that is the amount the plaintiffs would receive if the court were to declare the lien involved. *Cisney,* 2018 WL 3594991, at *5.

**III.    Law and Analysis**

    **A.    Legal Standards**

A defendant may remove "any civil action brought in State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1). Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").

If removal is sought on the basis of diversity jurisdiction, then "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). If, however, the "State practice…does not permit demand for a specific sum…[removal] is proper if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000]." 28 U.S.C. § 1446(c)(2)(A)(ii)-(B). The burden of proof is on the removing defendant to establish that the amount in controversy has been satisfied. *Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir. 1999). The defendant may make this

showing (1) showing "it is apparent from the face of the petition that the claims are likely to exceed $75,000;" or (2) establishing "summary judgment type evidence" to support that the amount exceeds $75,000, exclusive of interest and costs. *Manguno v. Prudential Prop. & Cas. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citations omitted). "It is the recognized burden of the party invoking jurisdiction 'both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and if, appropriately challenged, or if inquiry be made by the court of its own motion, to support the allegation.'" *Becnel v. State Farm Fire & Cas. Co.*, No. 07–6742, 2007 WL 4570821, at *1 (E.D. La. Dec. 26, 2007) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938)).

There is no dispute that Plaintiff is a citizen of Louisiana and Defendant is a citizen of Texas, and therefore diversity of citizenship exits. There is also no dispute that removal is timely. The sole issue before the Court is whether the amount in controversy has been satisfied under 28 U.S.C. § 1332(a).

**B.    Analysis**

To start, Plaintiff's reliance on *Garcia* is misplaced. Plaintiff likens its request for removal of Defendant's lien to the plaintiffs' request for equitable accounting in *Garcia*. Particularly, Plaintiff suggests that the value of the lien is immaterial, and the only "damages" that it will suffer are the "costs, fees, and expenses" associated with the removal of the lien. (R. Doc. 10-1 at 3). Plaintiff argues that said costs are irrelevant to the amount in controversy. Therefore, the amount in controversy is not met. Plaintiff's argument is not convincing.

As explained by the Fifth Circuit, in equitable relief cases, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Garcia,* at 640.

The amount in controversy "is the value of the right to be protected or the extent of the injury to be prevented." *Greenberg*, 134 F.3d at 1252-53.

Cases involving equitable relief and declaratory judgment are instructive. After surveying the caselaw, the Court finds the ruling in *Cisney* corresponds with this circuit's methodology of valuing the amount in controversy in such cases. 2018 WL 3594991, at *4 ("the value of the declaratory relief is the monetary value of the benefit that would flow to the plaintiff[s] if the relief [sought] were granted.") (internal citations and quotations omitted). "While Plaintiffs attempt to argue that the lien has no value, the value of the lien in dispute is clearly $175,338.00 as that is the amount Plaintiffs would receive if the Court were to declare the lien invalid." *Id.* at *5.

In *Procare Automotive, LLC v. MidAmerican Energy Services, LLC*, the plaintiff and an energy provider entered an agreement under which the plaintiff would pay "a fixed price for electricity" and any "ancillary charges." No. SA-21-CV-00896-XR, 2021 WL 5822832, at *1 (W.D. Tex. Dec. 7, 2021). After a winter freeze "that caused an unprecedented strain on" the energy grid, the price of natural gas and electricity increased. The defendant assessed the plaintiff charges for the increased cost of electricity. According to the defendant, the charges assessed were "ancillary charges" for which the plaintiff is responsible under their agreement. Thereafter, the plaintiff filed suit seeking, among other things, declaratory judgment that the defendant is not entitled to the ancillary charges assessed. The court held that "the value of a judicial declaration that" the defendant "is not entitled to the [a]ncillary [c]harges]" is the "amount of all of the" ancillary charges. *Procare Automotive, LLC,* 2021 WL 5822832, at *2.

In *Leininger v. Leininger,* the plaintiff sought to nullify and enjoin the enforcement of a $105,000 Ohio state court judgment. 705 F.2d 727 (5th Cir. 1983). The Fifth Circuit explained

that the amount in controversy was met because the "value of the right to be protected or the extent of the injury sought to be prevented was the amount of the judgment." *Id.* at 729.

In *San Antonio Nat. Bank v. Daktronics, Inc.*, the plaintiff and defendant entered a ten year advertising contract with payments totaling $200,000. No. SA-11-CA-0149-XR, 2011 WL 972429, at *1 (W.D. Tex. March 17, 2011). After a dispute between the parties, the plaintiff filed suit in state court seeking a "declaratory judgment that [a] $15,000 check fully and completely satisfied any claims [the defendant] may have against [it]." *Id.* The defendant removed the matter to federal court on the grounds that the amount in controversy was met because, under the contract between the parties, the plaintiff owed defendant $150,000. Conversely, the plaintiff argued that the amount in controversy was not met because the declaratory judgment was limited to $15,000. The court found that the value of the right the plaintiff seeks to protect is $150,000 because if the plaintiff were to prevail, she would be discharged of the obligation to pay the remaining $150,000.

Considering the above cases, when the crux of the matter is, as here, a monetary obligation, the amount in controversy is the value of the debt that the plaintiff is seeking to relieve itself of. Here, Plaintiff's chief arguments are that (1) Defendant has no right to place a lien on Westlake Chemical's property and (2) Defendant's lien is in excess of the amount contractually owed to Defendant. Accordingly, Plaintiff is seeking to, among other things, relieve itself of the obligation to pay an amount more than what it is owed to Defendant.

The value of the lien on Westlake Chemical's property is $215,755. Plaintiff avers that, pursuant to the Purchase Order, it is only obligated to pay $97,185 (i.e., the face value of the Purchase Order ($73,285) plus the cost of the additional authorized work ($23,900)). Plaintiff argues, and Defendant concedes, that this amount has already been paid. (R. Doc. 1-2 at 35; R.

Doc. 1-3). Defendant, however, maintains that this payment is only a partial payment of Plaintiff's total debt. (R. Doc. 1-3). According to Defendant, Plaintiff is currently indebted in an amount not less than $118,570. (R. Doc. 1-3). Accordingly, at a minimum the amount in controversy is $118,570 because that is what Plaintiff stands to lose (or the extent of its injury) if it does not prevail in the matter. This amount exceeds the jurisdictional requisite. Therefore, the Court concludes that Defendant has met its burden of proving that the amount in controversy is met.

### IV. Conclusion

**IT IS RECOMMENDED** that Plaintiff's Motion to Remand (R. Doc. 10) be **DENIED.**

Signed in Baton Rouge, Louisiana, on May 22, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**